USAO2010R00090/VSL

 

FILED

APR - 3 2024

AT 3:00 PM
CLERK, U.S. DISTRICT COURT - DNJ

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

    v.

PATRICK SCHMITZ,
  a/k/a "William Gibson,"
  a/k/a "PapaLegba"

:  Hon.
:
:  Crim. No. 24- **234 ( RMB)**
:
:  Count 1
:  21 U.S.C. § 848
:  (Continuing Criminal Enterprise)
:
:  Count 2
:  21 U.S.C. § 846
:  (Conspiracy to Distribute and Possess
:  with Intent to Distribute Controlled
:  Substances)
:
:  Count 3
:  21 U.S.C. § 963
:  (Conspiracy to Import Controlled
:  Substances)
:
:  Count 4
:  21 U.S.C. § 841(h)(1)(B)
:  18 U.S.C. § 2
:  (Distribution of Controlled Substances
:  By Means of the Internet)
:
:  Count 5
:  21 U.S.C. § 843(b)
:  (Use of a Communications Facility
:  In Furtherance of Drug Trafficking)
:
:  Count 6
:  18 U.S.C. § 1029(b)(2)
:  (Access Device Fraud Conspiracy)
:
:  Count 7
:  18 U.S.C. § 1028(f)
:  18 U.S.C. § 1028(b)(1)(A)
:  (Conspiracy to Unlawfully Transfer an
:  Identification Document)
:
:  Count 8
:  18 U.S.C. § 1956(h)
:  (Money Laundering Conspiracy)

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges as follows:

## Introduction

Defendant PATRICK SCHMITZ, a/k/a "William Gibson," a/k/a "PapaLegba," ("SCHMITZ"), conspired with others to found The Versus Project ("Versus"), a leading dark web marketplace that enabled users to buy and sell illegal goods, including heroin and other illicit drugs, stolen and fraudulent identification documents and access devices, counterfeit currency, malware, and hacking tools. From at least in or around November 2019 to in or around May 2022, thousands of drug dealers and other vendors of unlawful products used Versus to distribute large shipments of drugs and other illicit goods to thousands of customers worldwide, including in the United States. When SCHMITZ and others ceased operations in or around May 2022, Versus had over 380,000 registered users and offered over 32,000 product listings. While it was operational, nearly 600,000 orders were placed on Versus and, at least 300,000 of those orders were completed resulting in millions of dollars of transactions.

## COUNT 1
### (Continuing Criminal Enterprise)

### General Allegations

1. At all times relevant to this Indictment:

   a. SCHMITZ was a German citizen who resided in or around Colombia.

2

b.    Versus existed on the dark web, meaning it was accessible only through The Onion Router ("Tor") network, which anonymized the Internet Protocol ("IP") addresses of its underlying servers. By design, the use of Tor made it difficult to identify the true physical locations of the website's administrators, moderators, vendors, and customers. Versus required its users to transact in virtual currencies, including Bitcoin and Monero, and did not allow for transactions in fiat currencies.

c.    Virtual currencies are digital representations of value that are circulated on the Internet and are not stored in a physical form. They are not issued by any government, but instead are generated and controlled through computer software operating on decentralized peer-to-peer networks. Users of virtual currencies send units of value to and from "addresses," which are unique strings of numbers and letters functioning like a public bank account number. Virtual currency transactions are recorded on a publicly available, distributed ledger, often referred to as a "blockchain." Although transactions are visible on the public ledgers, each transaction is only listed by a series of letters and numbers that do not identify the individuals involved in the transaction. Users can avoid traditional, regulated financial institutions, which collect information about their customers and maintain anti-money laundering and fraud programs. Versus and its users were therefore able to bypass traditional financial systems by only accepting virtual currencies.

d.    Versus required its users to execute transactions through the Versus platform. Vendors and customers were prohibited from sharing contact details that would allow them to communicate outside of Versus. After a customer

3

selected a product to purchase, Versus would automatically generate an invoice with an address where cryptocurrency should be sent. The customer would also need to provide a cryptocurrency refund address in the event the vendor declined to accept the order. Within 72 hours after the customer had paid for the order, the vendor could either choose to accept or decline an order. If the vendor accepted the order, the vendor was required to ship the product within 7 days. Once the customer received the product, the customer was required to "finalize" the order on Versus so that payment was released to the vendor.

e. Versus was modeled after an e-commerce website. Users could choose a username and password to create a free account to access Versus. Versus categorized products for sale using categories such as "drugs," "fraud," "digital items," "services," and "software & malware." Users could also search Versus for products by keyword instead of scrolling through listings by category. Versus' homepage displayed top vendors based on recent sales history and vendors who paid to have their profiles displayed there. Users who experienced issues on the platform could submit tickets to receive assistance from Versus' administrators.

f. To sell goods or services on Versus as a vendor, a user was required to pay a nonrefundable bond or complete an application to receive a waiver. Once approved as vendors, individuals could create listings for customers to purchase certain illegal items, as described above. Customers could leave feedback about vendors and Versus provided metrics about vendors, such as the number of sales they completed on Versus. If a vendor or customer disputed a transaction, Versus provided dispute settlement services.

4

g.     Versus generated revenue through multiple methods, in addition to the nonrefundable bonds paid by vendors, as mentioned above. For example, Versus kept a percentage of each completed transaction as a commission. Vendors were also required to pay penalties if they were found to have violated Versus' rules.

h.     As a co-founder of Versus, SCHMITZ received a portion of the profits Versus generated. Virtual currency wallets that SCHMITZ controlled transacted in cryptocurrency worth millions of United States dollars. On or about April 7, 2021, SCHMITZ told another individual ("Individual-1") over an online messaging application ("Application-1") that SCHMITZ "clean[ed] coins ones [sic] a month."

i.     SCHMITZ played a pivotal role in running Versus. He promoted Versus on the dark web, recruited vendors, and developed strategies to monetize Versus. SCHMITZ also handled the day-to-day management of Versus, such as responding to user tickets, reviewing vendor applications, and resolving disputes between vendors and customers. Over time, SCHMITZ recruited and supervised staff, who worked on Versus and reported to him. SCHMITZ often used Monero to pay staff salaries because its enhanced anonymity features would help SCHMITZ evade identification by law enforcement.

j.     In or around May 2022, after a hacker claimed to have found a security vulnerability with Versus, Versus was shut down. SCHMITZ announced the decision to close Versus in a post on a dark web community discussion forum. In the post, SCHMITZ wrote, "Once we identified the vulnerability, we were posed

5

with a fork in the road, to rebuild and come back stronger (as we had done before) or to gracefully retire. After much consideration, we have decided on the latter. We built Versus from scratch and ran for 3 years."

k.    SCHMITZ knew that he was involved in illegal activity. On or about December 23, 2020, after Individual-1 told SCHMITZ on Application-1 that Individual-1 did not believe there was a statute of limitations for continuing criminal enterprises and older market administrators should enjoy their money in a non-extraditable country, SCHMITZ responded, "[T]here was an article on this german news site. The admin told me in germany running a market is not a crime. . yet. They want to make it one with the max sentence being 5 years. . . I guess I will go to germany lmao. [J]ust in case. [B]etter 5 years there than a lifetime in the states."

### The Continuing Criminal Enterprise

2.    From at least as early as in or around November 2019 through in or around May 2022, in the District of New Jersey and elsewhere, the defendant,

**PATRICK SCHMITZ,**
**a/k/a "William Gibson,"**
**a/k/a "PapaLegba,"**

did knowingly and intentionally engage in a continuing criminal enterprise in that SCHMITZ unlawfully, knowingly and intentionally violated Title 21, United States Code, Sections 841(h)(1)(B), 843(b), 846, and 963, which violations include, but are not limited to, the substantive violations alleged in Counts 2 through 5, which are realleged and incorporated herein by reference as though fully set forth in this Count, and which violations were part of a continuing series of violations of the

6

Controlled Substances Act, Title 21, United States Code, Section 801, *et seq.*,

undertaken by SCHMITZ in concert with at least five other persons with respect to

whom SCHMITZ occupied positions of organizer, supervisor, and any position of

management, and from which such continuing series of violations SCHMITZ

obtained substantial income and resources.

In violation of Title 21, United States Code, Section 848(a).

7

## COUNT 2
(Conspiracy to Distribute and Possess
with Intent to Distribute Controlled Substances)

1. The allegations in the Introduction and paragraph 1 of Count 1 of this Indictment are realleged here.

2. From at least as early as in or around November 2019 through in or around May 2022, in the District of New Jersey and elsewhere, the defendant,

**PATRICK SCHMITZ,**
**a/k/a "William Gibson,"**
**a/k/a "PapaLegba,"**

did knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

In violation of Title 21, United States Code, Section 846.

8

## COUNT 3
(Conspiracy to Import Controlled Substances)

1.     The allegations in the Introduction and paragraph 1 of Count 1 of this Indictment are realleged here.

2.     From at least as early as in or around November 2019 through in or around May 2022, in the District of New Jersey and elsewhere, the defendant,

**PATRICK SCHMITZ,**
**a/k/a "William Gibson,"**
**a/k/a "PapaLegba,"**

did knowingly and intentionally conspire and agree with others to import into the United States from a place outside thereof, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 952 and 960(b)(3).

In violation of Title 21, United States Code, Section 963.

9

## COUNT 4
### (Distribution of Controlled Substances
By Means of the Internet)

1.    The allegations in the Introduction and paragraph 1 of Count 1 of this Indictment are realleged here.

2.    From at least as early as in or around November 2019 through in or around May 2022, in the District of New Jersey and elsewhere, the defendant,

**PATRICK SCHMITZ,**
**a/k/a "William Gibson,"**
**a/k/a "PapaLegba,"**

who will first be brought to the District of New Jersey within the meaning of Title 18, United States Code, Section 3238, did deliver, distribute, and dispense controlled substances by means of the Internet, in a manner not authorized by law, and did aid and abet such activity.

In violation of Title 21, United States Code, Section 841(h), and Title 18, United States Code, Section 2.

10

## COUNT 5
(Use of a Communications Facility
In Furtherance of Drug Trafficking)

1.    The allegations in the Introduction and paragraph 1 of Count 1 of this Indictment are realleged here.

2.    On or about February 13, 2021, in the District of New Jersey and elsewhere, the defendant,

### PATRICK SCHMITZ,
**a/k/a "William Gibson,"**
**a/k/a "PapaLegba,"**

who will first be brought to the District of New Jersey within the meaning of Title 18, United States Code, Section 3238, did knowingly and intentionally use any communication facility, in facilitating the commission of any act or acts constituting a felony under Title 21, United States Code, Sections 841, 846, 952, 960, and 963, that is, the offenses set forth in Counts 1 through 4 of this Indictment, which are incorporated here by reference.

In violation of Title 21, United States Code, Section 843(b).

11

## COUNT 6
### (Conspiracy to Commit Access Device Fraud)

1.    The allegations in the Introduction and paragraph 1 of Count 1 of this Indictment are realleged here.

2.    From at least as early as in or around November 2019 through in or around May 2022, in the District of New Jersey and elsewhere, the defendant,

**PATRICK SCHMITZ,**
**a/k/a "William Gibson,"**
**a/k/a "PapaLegba,"**

who will first be brought to the District of New Jersey within the meaning of Title 18, United States Code, Section 3238, did knowingly and intentionally conspire and agree with others to knowingly and with the intent to defraud, traffic in one or more unauthorized access devices, as defined in Title 18, United States Code, Section 1029(e)(3), during any one-year period, and by such conduct obtained anything of value aggregating to $1,000 or more during that period, affecting interstate and foreign commerce, contrary to Title 18, United States Code, Sections 1029(a)(2) and (c)(1)(A)(i).

In violation of Title 18, United States Code, Section 1029(b)(2).

12

## COUNT 7
(Conspiracy to Unlawfully Transfer an Identification Document)

1. The allegations in the Introduction and paragraph 1 of Count 1 of this Indictment are realleged here.

2. From at least as early as in or around November 2019 through in or around May 2022, in the District of New Jersey and elsewhere, the defendant,

**PATRICK SCHMITZ,
a/k/a "William Gibson,"
a/k/a "PapaLegba,"**

who will first be brought to the District of New Jersey within the meaning of Title 18, United States Code, Section 3238, did knowingly and intentionally conspire and agree with others to transfer identification documents, knowing that such documents were stolen or produced without lawful authority, and the identification documents appear to have been issued by or under the authority of the United States and include driver's licenses, contrary to Title 18, United States Code, Sections 1028(a)(2) and (b)(1)(A).

In violation of Title 18, United States Code, Section 1028(f).

13

## COUNT 8
(Conspiracy to Commit Money Laundering)

1. The allegations in the Introduction and paragraph 1 of Count 1 of this Indictment are realleged here.

2. From at least as early as in or around November 2019 through in or around May 2022, in the District of New Jersey and elsewhere, the defendant,

**PATRICK SCHMITZ,**
**a/k/a "William Gibson,"**
**a/k/a "PapaLegba,"**

did knowingly and intentionally conspire and agree with others to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, namely, a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(a), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

14

## FORFEITURE ALLEGATION AS TO COUNTS 1 THROUGH 5

1.    Pursuant to Title 21, United States Code, Section 853, upon conviction of the controlled substance offenses alleged in Counts 1 through 5 of this Indictment, the defendant, PATRICK SCHMITZ, a/k/a "William Gibson," a/k/a "PapaLegba," shall forfeit to the United States any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the offenses charged in Counts 1 through 5 of this Indictment and any property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses alleged in Counts 1 through 5 of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNT 6

2.    As a result of committing the offense in violation of Title 18, United States Code, Section 1029 alleged in Count 6 of this Indictment, the defendant PATRICK SCHMITZ, a/k/a "William Gibson," a/k/a "PapaLegba," shall forfeit to the United States:

> a.   pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense; and

> b.   pursuant to Title 18, United States Code, Section 1029(c)(1)(C), any personal property that was used or intended to be used to commit or to facilitate the commission of the offense charged in Count 6 of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNT 7

4.    As a result of committing the offense in violation of Title 18, United States Code, Section 1028 alleged in Count 7 of this Indictment, the defendant

15

PATRICK SCHMITZ, a/k/a "William Gibson," a/k/a "PapaLegba," shall forfeit to the United States:

    a.  pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense; and

    b.  pursuant to Title 18, United States Code, Section 1028(h), any and all illicit authentication features, identification documents, document-making implements and means of identification.

## FORFEITURE ALLEGATION AS TO COUNT 8

5. As a result of committing the offense in violation of Title 18, United States Code, Section 1956(h) alleged in Count 8 of this Indictment, the defendant PATRICK SCHMITZ, a/k/a "William Gibson," a/k/a "PapaLegba," shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such offense, and all property traceable to such property.

## Substitute Assets Provision
## (Applicable to All Forfeiture Allegations)

6. If any of the property described above, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b).

A TRUE BILL

FOREPERSON

PHILIP R. SELLINGER
United States Attorney

17

CASE NUMBER: 24-

**United States District Court**
**District of New Jersey**

**UNITED STATES OF AMERICA**
v.
**PATRICK SCHMITZ,**
a/k/a "William Gibson,"
a/k/a "PapaLegba"

**INDICTMENT FOR**

21 U.S.C. § 848
21 U.S.C. § 846
21 U.S.C. § 963
21 U.S.C. § 841(b)(1)(B)
21 U.S.C. § 843(b)
18 U.S.C. § 1029(b)(2)
18 U.S.C. § 1028(f)
18 U.S.C. § 1956(h)
18 U.S.C. § 2

A True Bill.

Foreperson

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

VINAY S. LIMBACHIA
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY

JORGE GONZALEZ
STEFANIE SCHWARTZ
TRIAL ATTORNEYS, COMPUTER CRIME AND INTELLECTUAL PROPERTY SECTION
WASHINGTON, DISTRICT OF COLUMBIA